Sandra J. BECKLER

v.

Juanita KREPS, Secretary of Commerce, United States Department of Commerce.

Civ. A. No. 79–2040.

United States District Court, E. D. Pennsylvania.

June 25, 1982.

Richard J. Conn, Philadelphia, Pa., for plaintiff.

Peter F. Vaira, U. S. Atty., Rachel Shao, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiff Sandra Beckler, an employee of the Economic Development Administration (hereinafter "EDA") of the United States Department of Commerce ("Department") since 1970, brought this action contending that she was repeatedly denied promotion in retaliation for having filed charges of

gender and religious discrimination against the agency in 1974. She also contends that these denials of promotion were in violation of an agreement of adjustment, dated November 13, 1974 ("adjustment"), which was to have resolved the earlier charge of discrimination. Plaintiff contends that defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16(c). Plaintiff also seeks relief pursuant to the Equal Pay Act, 29 U.S.C. § 206(d). Trial was held before this Court, sitting without a jury, on February 16, 17, 18 and 19, 1982. For the reasons hereinafter set forth, the Court will enter judgment in favor of the defendant and against the plaintiff.

Based on the evidence presented at trial, the Court makes the following findings of fact. Plaintiff, a woman, began working as an employee of the EDA on July 27, 1970 and continues to be employed at the EDA. On March 7, 1979, she filed a charge of discrimination with the Office of Civil Rights of the U. S. Department of Commerce. At that time, she was a program assistant in stenography for the Technical Support Division of the Atlantic Regional Office of the EDA and was classified at the GS–3–01–6 grade. In her charge, plaintiff alleged that she had been discriminated against on the basis of her gender and her religion (Jewish) in that she was frequently assigned tasks below her level of classification, skill, and ability. Plaintiff had also contended that she was, because of her gender and religion, not being considered for promotions for which she was qualified. A series of discussions between plaintiff and Department representatives ensued. As a result of these negotiations, Ms. Beckler's charge of discrimination was adjusted by an agreement dated November 13, 1974, by letter from Nathan L. Maryn, Special Assistant to the Deputy Assistant Secretary for the EDA, to the plaintiff, who co-signed the letter on November 22, 1974. Under the terms of the adjustment, EDA agreed to: (1) correct the position description for the plaintiff's job based upon its review of her duties, responsibilities, and supervision; (2) instruct her supervisors to "exercise judgment in their tone of voice when dis-

cussing work matters with you;" (3) give plaintiff "due consideration for promotion if warranted in your position or for any position under the Merit Promotion for which you are qualified and for which you appropriately file;" (4) give serious consideration to restructuring her work load and responsibilities in order to provide plaintiff with para-professional or non-clerical work responsibilities and to afford her an opportunity to participate in career developmental programs; (5) remove from EDA's in-house personnel files "any materials not necessary to the efficient management of the regional office;" (6) review plaintiff's performance and discuss it to provide plaintiff "guidance as to areas for improvement." (Exhibit P–1 at 3–4).

The adjustment also provided that additional actions would be taken to benefit all EDA Regional Office employees. These actions included maintaining an aggressively positive equal employment opportunity program and reviewing EDA recruitment, training, and awards procedures in order to enhance equal employment opportunity. (Exhibit P–1 at 5).

After the adjustment, plaintiff continued to work at the EDA regional office in Philadelphia. She subsequently sought several posts of higher grade but was not selected for these positions. On December 21, 1976, she filed a formal charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The charge alleged, as does her complaint in this case, that she was rejected for these positions in retaliation for her earlier charges and that the EDA had not complied with the terms of the adjustment.

In March, 1975, plaintiff applied for the position of "Project Technician" in the EDA Atlantic Regional Office, a GS–5/6 position. This job was a "bridge position," that is, a post that was designed to begin training the job-holder for future advancement with EDA. The concept of the bridge position envisioned the job holder beginning the post at a relatively low GS rank and salary, but acquiring job skills and experience that would allow for upgrading of the post or

for promotion to higher ranked jobs within EDA. Plaintiff and several other applicants met the qualifications necessary for selection to the position. Geneva Corprew, a black woman, was selected for the job.

In August, 1975, plaintiff applied for a position as an Economic Development Assistant, at the GS–301–4/5/7 level. She, along with many other applicants, possessed the qualifications necessary to be selected for the job. Robert Locke, a white man, was selected for the position.

In September, 1976, plaintiff applied for a vacancy as a Computer Specialist at the GS–9 level. The EDA personnel office determined that she was not qualified for selection to the post because she did not meet the minimum time and grade requirements. Wayne Rhoda, a man with considerable computer programming experience, was selected for the job.

In 1977, plaintiff was assigned to a detail in the Civil Rights Division of EDA. At that time, her grade level was GS–301–6, and she maintained this grade level while on assignment with the civil rights division. She remained on this detail until early 1978, and received good job performance ratings while on the detail. However, the detail was temporary and she returned to EDA's regional office in 1978. She was not promised a permanent position in the Civil Rights Division of EDA, and no such positions became available during the time of her detail with the civil rights division. During this detail, she performed primarily clerical work and data analysis that had previously been done by a secretary.

In September, 1978, plaintiff applied for a position as a Technical Assistant Specialist (GS–7/9/11–OS/II–78–173). She was qualified for selection to the post, as were other applicants. Rita Potter, a woman with several years experience in the work, was selected for the post.

In September, 1978, plaintiff applied for a position as a Public Works Specialist (GS–7/9/11–OS–II–78–186). There were several openings for public works specialists and many qualified applicants, including the plaintiff. Ms. Beckler was not selected for the position.

In September, 1978, plaintiff applied for a position as a Construction Management Specialist (GS–7/9/11–OS–II–75–176). She, along with many other applicants, was qualified for the post, but was not selected.

In November, 1978, plaintiff applied for a position as an Equal Opportunity Specialist (OS–II–78–263), a post for which she and many of the other applicants were minimally qualified. Elaine Young, a black woman with five years' experience in that division, was selected.

During 1978, plaintiff also applied for the position of Financial Analyst (GS–160, 7/9/11, OS–II–78–187) but was found to lack the minimum acceptable qualifications for the post.

In 1979, plaintiff applied for and was not selected for the following positions: Financial Analyst, (GS–7/9/11, OS/2/79/64, OS/2/74/211; Program Assistant, GS–301–6, OS/2/79/209; Technical Assistant Specialist, GS–7/9/11, OS/II–79–209). Other qualified applicants were selected for each of these positions.

■ On the basis of the evidence presented at trial, the Court finds that the persons selected for the positions plaintiff sought in 1975, 1976, 1978 and 1979 possessed better qualifications for the jobs than did the plaintiff and that it was on this basis that others were selected for the positions. Plaintiff, was, however, given serious consideration for each position for which she had applied. The Court also finds that, on the basis of the evidence presented at trial, the plaintiff's gender, race, religion, and earlier discrimination charges were not factors in the EDA's job selection decisions. The selection of others for these positions was not an attempt to retaliate against the plaintiff because of her earlier filing of discrimination charges.

The Court finds, however, that plaintiff is an intelligent, industrious employee, who has participated in several episodes of violent disagreement with her supervisors and co-workers, and repeatedly engaged in inap-

propriate outbursts personally attacking her co-workers and supervisors in an abusive manner. Her supervisors, however, engaged in good faith efforts to implement the 1974 adjustment. Furthermore, the evidence showed that plaintiff was frequently tardy, often transacted personal business at work, and, on one occasion, refused to perform an emergency work assignment. The evidence shows that during one period of her employment plaintiff demanded that all assignments for her be set down in writing. Despite the unusual, time-consuming and disruptive nature of this request, her supervisor complied.

The evidence also indicates that the EDA was uniformly supportive of plaintiff's efforts to acquire new skills and greater educational attainment. On the one occasion where the EDA could not accommodate her request, it was due to the unavailability of funds, not from any discrimination on the basis of gender, religion, or previous complaints.

At trial, the defendant objected to the introduction of any evidence concerning events that occurred after the plaintiff filed her formal charge of discrimination with the Department in 1976. The government contended that under 42 U.S.C. § 2000e–16(c), the exclusive judicial remedy for federal employment discrimination claims, exercise of administrative remedies is a jurisdictional prerequisite to commencement of a civil action alleging discrimination in federal employment, and that the plaintiff must file a discrimination charge for each time she was rejected for a job opening in order to introduce evidence of this job application and rejection at trial. Defendant cited *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) as support for this proposition.

Since trial, the Supreme Court issued its opinion in *Zipes, et al v. Trans World Airlines, Inc.*, —— U.S. ——, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). In a discrimination case brought against a private employer pursuant to 42 U.S.C. § 2000e–5(c), the Court held that

filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. The structure of Title VII, the congressional policy underlying it, and the reasoning of our cases all lead to this conclusion.

102 S.Ct. at 1129. Though *Zipes* did not involve a discrimination claim against the federal government, the *Zipes* holding would likely be extended to encompass cases brought pursuant to 42 U.S.C. § 2000e–16(c). Thus, this Court does not view exercise of administrative remedies to be a jurisdictional prerequisite to suit under Title VII.

However, even prior to *Zipes*, many cases had established a modification to the requirement of exercise of administrative remedies where the discriminatory conduct complained of constitutes a continuing violation.

It has been consistently held that:
jurisdiction may be exercised over all claims encompassed within the EEOC charge and like or related matters which might reasonably be expected to be subject to an EEOC investigation growing out of the charge.... This rule is broad enough to include claims arising from new acts occurring during pendency of the EEOC charge and reasonably related to or growing out of acts alleged in the charges.... Claims for retaliation for filing the charge are within this category.

*Flesch v. Eastern Pennsylvania Psychiatric Institute*, 434 F.Supp. 963, 970 (E.D.Pa. 1977). *Accord, Lazic v. University of Pennsylvania*, 513 F.Supp. 761 (E.D.Pa.1981); *Cohen v. Community College of Philadelphia*, 484 F.Supp. 411 (E.D.Pa.1980). *See also UAL, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *Ramirez v. National Distillers & Chemical Corporation*, 586 F.2d 1315, 1319–20 (9th Cir. 1978) (where subsequent acts of defendant are reasonably related to original charge of discrimination, an employee need not file an EEOC charge for each subsequent act of

alleged discrimination). In cases involving private employers, a claim of repeated failure to promote has been considered a continuing violation. *See Mobley v. Acme Markets*, 473 F.Supp. 851 (D.Md.1979); *Corbin v. Pan American World Airways, Inc.*, 432 F.Supp. 939 (N.D.Cal.1977).

In *Ettinger v. Johnson*, 518 F.2d 648, 651–52 (3d Cir. 1975), the Third Circuit noted that the anti-discrimination requirements applicable to the federal government through 42 U.S.C. § 2000e–16(c) mirror those applicable to private employers governed by the other provisions of Title VII, 42 U.S.C. § 2000e, *et. seq. Accord, Bundy v. Jackson*, 641 F.2d 934 (D.C.Cir.1981). In *Guilday v. Department of Justice*, 451 F.Supp. 717, 723 (D.Del.1978), a claim of repeated failure to promote was held to be a continuing violation under 42 U.S.C. § 2000e–16(c). *Accord, Myles v. Schlesinger*, 436 F.Supp. 8 (E.D.Pa.1976); *Henry v. Schlesinger*, 407 F.Supp. 1179 (E.D.Pa.1976).

■ Thus, it appears clear that where the plaintiff claims a continuing pattern of discrimination in retaliation and the acts alleged to be a part of that pattern of retaliation the plaintiff need not file further administrative charges as to each act that is alleged to be part of the continuing retaliatory discrimination against the plaintiff. The defendant contends that the plaintiff should have filed a discrimination charge each time she was rejected for a position in order to present evidence regarding that position at trial. This approach would hinder both administrative and judicial economy. If the Court adopted the defendant's characterization of the "exercise of administrative remedies" requirement of Title VII, plaintiffs would need to file either a multitude of administrative charges or a multitude of law suits. Neither result would enhance the federal statutory scheme for combating discrimination in employment, particularly in cases involving retaliatory discrimination.

The plaintiff filed her charge in timely fashion in 1976. She contended then, as she did at trial, that her applications for other positions were rejected in retaliation for her having filed an earlier charge of gender and religious discrimination. The post-1976 application rejections are closely related to this charge. Plaintiff has therefore alleged a continuing violation of 42 U.S.C. § 2000e–16(c). Evidence concerning her job applications with EDA after 1976 were thus properly admissible at trial.

■ In order to prevail in a suit brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16(c), the plaintiff in this case had to first establish a prima facie case of discrimination or retaliation. If the plaintiff sets forth such a prima facie case, the defendant must "articulate some legitimate, non-discriminatory reason" for its decision(s) adverse to the plaintiff.

■ Once the defendant proceeds with its burden of production to rebut plaintiff's prima facie case, the plaintiff, who has the burden to convince the trier of fact, by a preponderance of the evidence, may then rebut the defendants' proffered reason for its decision by showing that it was merely pretext for discrimination or retaliation. *McDonnell Douglas v. Green*, 411 U.S. 792, 800–02, 93 S.Ct. 1817, 1823–24, 36 L.Ed.2d 668 (1973). Though *McDonnell Douglas* set forth this three-part procedure of shifting production burdens in a Title VII race discrimination case, the *McDonnell Douglas* approach is equally applicable to a gender discrimination claim. *See Kunda v. Muhlenberg College*, 621 F.2d 532, 541 (3rd Cir. 1980); *Bryant v. International Schools Services, Inc.*, 675 F.2d 562, 571 (1982) and to a claim of retaliation for protected Title VII activity, *see Womack v. Munson*, 619 F.2d 1292, 1296 (8th Cir. 1980); *Aquirre v. Chula Vista Sanitary Service*, 542 F.2d 779, 781 (9th Cir. 1976); *Hochstadt v. Worcester Foundation*, 425 F.Supp. 318, 324 (D.Mass) *aff'd*, 545 F.2d 222 (1st Cir. 1976).

■ Although discrimination cases can be usefully analyzed in terms of the three-phase framework set forth in *McDonnell Douglas v. Green, supra*, "there is no requirement that the evidence be introduced in such a compartmentalized form." *Wor-*

*thy v. United States Steel Corporation*, 616 F.2d 698, 701 (3rd Cir. 1980). Plaintiff's evidence relevant to the question of pretext can be presented as part of the initial evidence going to the prima facie case itself or it may be developed during the other party's case in chief, such as by cross-examination. *Id.* at 701; *Whack v. Peabody & Wind Engineering Co.*, 595 F.2d 190, 193 (3rd Cir. 1979). The plaintiff, however, always has the burden of persuasion. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254–256, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981).

In this case, the defendant has set forth a host of reasons for the personnel decisions which resulted in someone other than the plaintiff obtaining the positions applied for by the plaintiff. For all positions for which plaintiff applied, she was either ineligible for the job because she lacked a requisite qualification or, in connection with the jobs where she possessed the requisite qualifications, better qualified people were selected for the positions. As heretofore stated, the Court finds that defendant, for reasons that were not discriminatory or retaliatory, chose a better qualified person for each of the positions. Plaintiff failed to carry her burden of convincing this Court, by a preponderance of the evidence, that she was discriminated against because of her gender or her religion or that she had been retaliated against.

■ Plaintiff also alleged that EDA failed to comply with the terms of the adjustment of November 13, 1974. The Court finds, on the basis of the evidence presented at trial, that EDA substantially complied with the adjustment. Ms. Beckler's supervisors dealt with her in a sensitive and non-adversarial manner. She was given due consideration for selection to all the positions for which she applied. Her supervisors permitted her to engage in tasks and training activities designed to afford her the opportunity to become qualified for better positions. The in-house administrative files for the employees of the EDA Atlantic Regional Office were revised in accordance with the terms of the adjust-

ment. Ms. Beckler was given adequate supervision and feedback by her employer. It is unclear whether Ms. Beckler's position description was corrected as required by the informal adjustment. However, there is no evidence which suggests that she has in any way been harmed by any delays in correcting and keeping current her position description. Furthermore, there is absolutely no evidence in this record that any failure to correct the position description resulted from retaliation or from gender or race discrimination.

■ Plaintiff also made a claim pursuant to the Equal Pay Act in this litigation. Under the Equal Pay Act, 29 U.S.C. § 206(d), the plaintiff must show that her job required substantially equal skill, effort and responsibility in comparison to jobs performed by higher paid male employees. The burden then shifts to the defendant to prove that the wage differential is justified under one or more of this section's four exceptions: a seniority system, a system measuring earning by quantity or quality of production, or a differential based on any factor other than gender. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); *Angelo v. Bacharach Instrument Co.*, 555 F.2d 1164 (3rd Cir. 1977).

■ The Court finds that the plaintiff failed to carry her burden that her duties were substantially equal to those at EDA earning higher salaries and classified in higher government service grades. In reaching this finding, the Court recognizes that it is job content, rather than job classification or job description, which controls. *Usery v. Allegheny County*, 544 F.2d 148, 153–54 (3rd Cir. 1976). Though she routinely sought to do tasks more challenging than typing and other purely clerical matters, she was not performing the same work as those at EDA who were in higher grades and receiving higher salaries. For the reasons heretofore set forth, the Court finds that the plaintiff has not shown a violation of either Title VII or the Equal Pay Act. An appropriate order will be accordingly entered.

## ORDER

AND NOW, this 25 day of June, 1982, trial having been held in this matter before the Court, sitting without a jury, on February 16, 17, 18 and 19, 1982, for the reasons set forth in this Court's Memorandum of June 25th, 1982,

IT IS HEREBY ORDERED: JUDGMENT is ENTERED in favor of defendant Juanita Kreps, Secretary of the Department of Commerce, and against plaintiff Sandra Beckler.