**Pinkney N. DAVIS, Plaintiff,**

v.

**The NEW YORK CITY HEALTH & HOSPITALS CORPORATION; John Rhoder, Executive Director; and the Queens Hospital Center, Defendants.**

**No. 84 CV 4066.**

United States District Court, E.D. New York.

July 21, 1986.

---

Paul H. Senzer, Mineola, for plaintiff.

Frederick A.O. Schwarz, Jr., Corp. Counsel, City of New York, by Beth G. Schwarz, Asst. Corp. Counsel, New York City, for defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

### INTRODUCTION

Plaintiff, a black male and former Associate Director for Ambulatory Care Services at Queens Hospital Center, brings this action for employment discrimination under the auspices of Title VII of the Civil Rights Act, codified at 42 U.S.C. § 2000e *et seq.* He seeks a declaratory judgment under 28 U.S.C. § 2201, a permanent injunction restraining defendants from discriminating against him and restitution of all the rights, privileges, benefits and income that he would have received but for defendants' alleged unlawful conduct. The Court is empowered to hear this case pursuant to the jurisdictional grants of 42 U.S.C. § 2000e–5(f)(3) and 28 U.S.C. § 1343(4).

The case presents special problems in that it started as a claim for discriminatory discharge and very recently has been "modified" to a claim for discriminatory treatment in connection with a discharge which in and of itself may have been perfectly proper. Concededly, as discussed below, plaintiff, a black male, was a temporary or provisional employee terminable at will who was discharged along with many other non-minority employees in the course of the establishment of a "new administrative team" at Queens Hospital and was replaced first by a black male and permanently by a black female. Plaintiff claims, however, that he, unlike other non-minority employees, was not offered alternative employment within the City Hospital system. The record presently before this Court is not clear whether the facts forming the basis of the present claim were ever adequately presented to or considered by the State Division of Human Rights or the Equal Employment Opportunity Commission.

The parties will have to consider and possibly brief this question before any resolution may be had of the issues raised by this motion.

### BACKGROUND

#### A. *The Facts*

The events precipitating this action transpired eight years ago. From October 27, 1977 until July 14, 1978, Pinkney Davis ("Davis") served as Associate Director in charge of Ambulatory Care Services at Queens Hospital Center. During this time he was categorized as a Group II employee, meaning that his status was as a provisional or temporary employee who could be terminated at any time. Def's Rule 3(g) Stmt. at ¶¶ 2–3.

In May 1978 Dr. John Rhoder ("Rhoder") was appointed Executive Director of the Queens Hospital Center. Upon assuming command, Rhoder, according to Davis, "caused [his] immediate supervisor to commence a pattern of harassment designed to render the workplace uncomfortable and to force his ultimate resignation." Complt. at ¶ VIII. When this tactic was unsuccessful, plaintiff alleges that Rhoder personally advised him that he was bringing in a "new administrative team" and wished to have his "own person" fill plaintiff's position.

Consequently, plaintiff resigned his position effective July 14, 1978, though he now claims he was constructively discharged. Complt. at ¶ XII. Plaintiff was not offered the opportunity, allegedly accorded other, non-minority workers who were ousted by Rhoder, to be transferred elsewhere within the system so as to preserve his employee benefits that were subject to vest within seven months. Plaintiff was temporarily replaced by a black male and permanently by a black female. Complt. at ¶ XII.

As a result of these events Davis claims that he

was forced to endure intolerable, invidious racial and sexual discrimination, forced to resign under duress without any evidence or explanation of misconduct, ineffective work performance or absence. As a direct and proximate result of defendants' further failure to permit plaintiff's transfer within the system, plaintiff forfeited substantial retirement benefits, endured great mental suffering and was denied the opportunity of advancement to higher paying positions and conditions of employment because of race, color and/or sex.

Complt. at ¶ XIII.

B. *Procedural Posture*

The plaintiff filed a timely complaint with the New York State Division of Human Rights which was ultimately transferred to the Equal Employment Opportunity Commission ("EEOC") for disposition. Relying on the findings of the State Division of Human Rights, the EEOC determined on or about December 27, 1983 that "reasonable cause exists to believe that defendants violated Title VII." Complt. at ¶ II(c). On January 4, 1984 the EEOC commenced conciliation efforts which were ultimately unsuccessful and on July 17, 1984 issued plaintiff a right-to-sue letter. This action was filed on October 11, 1984, within the requisite 90–day period.

Originally, the City of New York was included as a defendant, but on June 7, 1985 the undersigned in open court granted the City's motion to dismiss the complaint against it for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6).

The parties appeared before the Court again in October on plaintiff's motion to serve a copy of the summons and complaint along with letters rogatory on defendant Rhoder, who at the time was residing outside of the United States in Saudi Arabia. The Court granted the motion, allowing plaintiff to effect service before the end of the year and staying discovery during the intervening period.

Plaintiff was unsuccessful in his attempts to serve Rhoder in Saudi Arabia and in February the remaining two defendants moved the Court for summary judgment. Before the Court heard argument on the motion Rhoder returned to the New York area and was served with a copy of the summons and complaint on March 7, 1986. An answer was filed on March 27, 1986 and on June 27, 1986 the Court heard argument on all defendants' motion for summary judgment.[1] At that time the

---

1. Corporation Counsel on behalf of defendant Rhoder also argues that the complaint should be dismissed against him because he was not served with a copy of the summons and complaint until approximately one year and five months after the commencement of the action in violation of Fed.R.Civ.P. 4(j). Rule 4(j) provides:

(j) Summons: Time Limit for Service. If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without

prejudice upon the court's own initiative with notice to such party or upon motion. This subdivision shall not apply to service in a foreign country pursuant to subdivision (i) of this rule.

The Court declines to dismiss the complaint on those grounds in the belief that sufficiently good cause exists why the plaintiff did not complete service earlier. A review of the history of this case reveals that plaintiff made two applications to serve Rhoder outside the United States—one to Magistrate Chrein and one to this Court. We granted the motion on October 11, 1985 and allowed plaintiff until December 31, 1985 to complete the task. Although plaintiff was unsuccessful in serving the defendant in

Court reserved decision and now addresses the matter.

## DISCUSSION

### A. *The Summary Judgment Motion*

The Rule 56 summary judgment mechanism operates to assure the just, speedy and inexpensive determination of any action. *Albatross Shipping Corp. v. Stewart*, 326 F.2d 208 (5th Cir.1964). A litigant is entitled to summary judgment when there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. *Crystal City v. Del Monte Corp.*, 463 F.2d 976 (5th Cir.), *cert. denied*, 409 U.S. 1023, 93 S.Ct. 464, 34 L.Ed.2d 315 (1972). The moving party bears the burden of establishing that no genuine dispute exists as to any material fact and the proffered evidence and any inference to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Beyah v. Coughlin*, 789 F.2d 986 (2d Cir.1986). Operating under these guidelines and from its "unique vantage point ... to evaluate evidence," a district court may exercise reasonable discretion "in granting summary judgment." *Catrett v. Johns-Manville Sales Corp.*, 756 F.2d 181, 186 (D.C.Cir.), *cert. granted, Celotex Corp. v. Catrett*, 474 U.S. ——, 106 S.Ct. 342, 88 L.Ed.2d 285 (1985).

The defendants, in accordance with Rule 56(c), have submitted pleadings, depositions and answers to interrogatories together with affidavits and a memorandum of law to show that there is no genuine issue of material fact that plaintiff was asked to resign for non-discriminatory reasons. Plaintiff, filing only an attorney's affidavit in opposition, raises no contrary facts disputing defendants' factual account. He merely asserts that "[p]laintiff will more than be able to prove at trial that his discharge was pretextual." Aff. of Paul

Senzer at ¶ 4. Plaintiff offers nothing concrete to substantiate this claim and, as should be well known to his attorney,

> a party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial for in doing so he risks the possibility that there will be no trial. A summary judgment motion is intended to 'smoke out' the facts so that the judge can decide if anything remains to be tried.

*Donnelly v. Guion*, 467 F.2d 290, 293 (2d Cir.1972).

Plaintiff also attempts to create an issue for trial by subtly shifting his theory of the case from that of discriminatory discharge to a discriminatory failure to relocate him within the City Hospital system. Senzer Aff. at ¶ 6. The defendants do not address this in their papers and for this reason the Court is compelled to address these two theories separately.

### B. *Discriminatory Discharge*

■ The starting point of any analysis in a Title VII case is the landmark decision in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (case involved a discriminatory failure to hire). In *McDonnell Douglas* the Supreme Court allocated the burden of proof in Title VII cases and devised a formula for determining if a plaintiff has a prima facie case, providing the lower courts with a theoretical construct for the trial of these cases. The plaintiff carries the initial burden of establishing a prima facie case of discrimination. The burden then shifts to the employer to articulate some legitimate, non-discriminatory reason for the plaintiff's rejection or discharge. To prevail, the plaintiff must shoulder the ultimate burden of persuasion to show that the defendant's reason was merely pretextual. *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. at 1824–26.

---

Saudi Arabia, the Court notes that plaintiff's attorney, a sole practitioner, did make efforts to do so. Upon learning from the City's attorney that Rhoder had returned to New York and was

working for the Health and Hospitals Corporation, he effected prompt service. Therefore, the Court will not grant a dismissal under Rule 4(j).

This schema was not meant to impose an artificial framework on Title VII trials. "Although cases are analyzed in terms of these three phases, there is no requirement that the evidence be introduced in such a compartmentalized form." *Worthy v. United States Steel Corp.*, 616 F.2d 698 (3rd Cir.1980); *see also Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277, 1281 (9th Cir.1977) (*McDonnell Douglas* does not require three-step "judicial minuet"). What *McDonnell Douglas* does require is that the trial court "make clear findings of fact as to each of the essential phases of the case, so that they can be examined in light of the evidence on record and the applicable legal principles." *Worthy*, 616 F.2d at 701.

The plaintiff's first hurdle is to establish a prima facie case, which may be done by showing that the plaintiff (1) belongs to a minority, (2) was qualified for the job, (3) was rejected and (4) that the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Recognizing that various scenarios may give rise to a Title VII suit, the Court wisely acknowledged that the requisite elements of the prima facie case may vary also. *Id.* at n. 13. Thus, in discharge cases such as the one at bar, as opposed to failure to hire cases, courts have substituted for the second element a showing that the plaintiff was meeting the normal requirements of his work, *Flowers*, 552 F.2d at 1282, and have permitted the final element to be satisfied by proof that plaintiff was replaced by a non-minority worker, *Powell v. Syracuse University*, 580 F.2d 1150, 1156 (2d Cir.), *cert. denied*, 439 U.S. 984, 99 S.Ct. 576, 58 L.Ed.2d 656 (1978); *see also, e.g., Richardson v. Sunmark Industries*, 560 F.Supp. 733, 736 (E.D.N.Y.1983).

It is not disputed that plaintiff is a black male and his work record was apparently exemplary. Senzer Aff. at ¶ 6. This showing far exceeds the necessary finding. A plaintiff need not demonstrate "superiority or flawless performance," only possession of "the basic skills necessary for the performance of [the] job." *Powell*, 580 F.2d at 1155. Similarly, the third element of the formula is also satisfied. Plaintiff was asked to resign. The fourth and crucial element, however, is absent. Plaintiff was not replaced with a non-minority worker, but at first by another black male and later by a black female. Under these facts, which are not contested, plaintiff has not made out a prima facie case. Moreover, the employer in this instance has advanced a legitimate, non-discriminatory reason for seeking plaintiff's resignation. A new executive director wished to bring in his own team of associates and so plaintiff, who was a Group II provisional employee, was asked to resign. Plaintiff, alone, was not singled out for this treatment. Several other employees were removed when Rhoder assumed command. Nothing in plaintiff's pleadings, papers or affidavits suggests that this reason was not bona fide but merely pretextual.

Based on the foregoing this Court finds that on the issue of discriminatory discharge, the defendants are entitled to summary judgment.

### C. *Discriminatory Failure to Relocate*

Plaintiff's recently evolved second theory is that he was subject to unequal treatment because other workers who fell prey to Rhoder's housecleaning were offered other jobs within the City Hospital system. Senzer Aff. at ¶ 6. The Court finds that under the flexible *McDonnell Douglas* test a prima facie case of discrimination might be established by demonstrating that the plaintiff (1) was a member of a minority, (2) was a satisfactory employee, (3) was discharged and not offered alternative employment, and (4) other non-minority workers similarly situated (*i.e.*, Group II workers) were offered other employment within the City Hospital system with retention of seniority and other employment benefits. *See, e.g., Worthy*, 616 F.2d at 702.

Applying this modified formula to the case at bar it appears that plaintiff may be able to make out a prima facie case, although it is not clear from the plaintiff's papers that all the people who allegedly received this treatment were similarly situ-

ated with plaintiff. The defendants may still be entitled to summary judgment on this issue if they can show that no genuine issue of material fact exists as to the equality of treatment accorded all discharged Group II employees or that there was a legitimate non-discriminatory reason for plaintiff's treatment if, in fact, it was different from those similarly situated. *Reich v. New York Hospital,* 513 F.Supp. 854, 860–61 (S.D.N.Y.1981) (where plaintiff alleged a prima facie case defendant still entitled to summary judgment if it establishes the absence of any genuine issue of material fact that reason for plaintiff's rejection was legitimate). Because this theory of recovery has not been adequately addressed or briefed at this time, the Court reserves decision on the question pending further submissions from both parties within sixty (60) days of the date hereof or, if none, until the trial on the merits.

## CONCLUSION

Defendants' motion for summary judgment is granted insofar as plaintiff's case is predicated on a theory of discriminatory discharge. The Court has reserved decision on plaintiff's second theory, that he was discriminatorily denied the opportunity to relocate within the City Hospital system.

SO ORDERED.