**ROBINSON, C. Bernard, Individually and On Behalf of Other Individuals Similarly Situated**

v.

**LEHMAN, John J., Individually, His Predecessors and Successors And As Secretary of the Navy and Ruehlin, John, Commodore, Individually, His Predecessors and Successors and as United States Navy Commanding Officer Aviation Supply Office.**

**Appeal of C. Bernard ROBINSON.**

**No. 84–1638.**

United States Court of Appeals, Third Circuit.

Argued June 12, 1985.

Decided Aug. 29, 1985.

---

Francis X. Nolan (argued), Harry C.J. Himes, Jennifer R. Miller, Himes, Sanders & Nolan, P.C., Philadelphia, Pa., for appellant.

Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Asst. U.S. Atty., Chief of Appeals, Alexander Ewing, Jr., Chief, Civ. Div., Joseph M. Masiuk, Asst. U.S. Atty., Philadelphia, Pa., Joseph G. Lynch, Associate Chief Trial Atty., Susan D. Warshaw (argued), Trial Atty., Litigation Office, Dept. of Navy, Washington, D.C., for appellees.

Before HIGGINBOTHAM and BECKER Circuit Judges, and LACEY, District Judge.[*]

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

Plaintiff-appellant Collien Bernard Robinson, a civilian employee of the United

---

[*] Honorable Frederick B. Lacey, United States District Court for the District of New Jersey, sitting by designation.

States Navy, initiated this racial discrimination action on behalf of himself and other individuals similarly situated, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1982), against defendant-appellees the Secretary of the United States Navy and the Commanding Officer of the United States Navy's Aviation Supply Office, Philadelphia, Pennsylvania.[1]

Robinson submitted a motion for class certification on June 16, 1983, which was denied on August 30, 1983 for failure to establish compliance with Fed.R.Civ.P. 23, with leave to file a supplemental motion. A supplemental motion for class certification was filed on September 4, 1983. This motion was denied on January 6, 1984.[2] Prior to trial, Robinson petitioned for issuance of a temporary restraining order seeking, *inter alia,* to enjoin the Navy's counsel from contacting, interviewing, or communicating with employees of the Aviation Supply Office, particularly black employees, with reference to any aspect of the action. Robinson alleged that the Navy was attempting to coerce and intimidate the witnesses to prevent them from testifying. After oral argument, the district court denied this motion also.

A non-jury trial on the individual action commenced on July 2, 1984, after which the district court found that the evidence did not support Robinson's assertion that his non-selection for promotion had been the result of prohibited discrimination. The district court determined that although under *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct.

1089, 67 L.Ed.2d 207 (1981), Robinson had presented a prima facie case of discrimination, the Navy had articulated legitimate reasons for its failure to promote him and had rebutted Robinson's prima facie case. The district court concluded that Robinson failed to "carry his burden of proof under *Burdine* of showing that [the] articulated reason was pretextual and that 'but for' the plaintiff's race he would have been promoted." Appendix ("App.") at 1417.

This appeal followed entry of final judgment in favor of the defendants. For the following reasons, we affirm.

## I.

Collien Bernard Robinson ("Robinson") is a black male citizen of the United States and a resident of the Commonwealth of Pennsylvania. He earned his Bachelor of Science degree in accounting from Temple University in 1958. On April 25, 1960 he started civilian employment in the entry level Grade Schedule Five ("GS-5") position of Supply Commodity Management Assistant with the United States Navy's Aviation Supply Office ("ASO") located in Philadelphia. Robinson received a series of competitive and non-competitive promotions in rapid succession from GS-5 to GS-7, to GS-9, to GS-11, and then to the GS-12 Supply Systems Analyst position in the Systems Development Division, Systems Development Branch I of ASO, in December of 1968. App. at 32.

Because of his outstanding abilities and potential, the ASO awarded Robinson a fel-

---

1. After exhausting the administrative appeals process and after receipt of notification from the Equal Employment Opportunity Commission that he had 30 days to file a civil action, Robinson filed suit in district court. The original complaint named defendants Commodore John Ruehlin, Commanding Officer of the Aviation Supply Office, and Secretary of the Navy John J. Lehman in their individual capacities. It alleged claims of individual and class-wide racial discrimination under 42 U.S.C. § 2000e–5(g), § 1981, § 1985, as well as the first, fifth and thirteenth amendments. Appendix ("App") at 506–07. On August 30, 1983, the district court granted summary judgment in favor of the Navy and dismissed the individual defendants and 13 of the 15 counts of class discrimina-

tion. The only allegations remaining after this dismissal were Robinson's individual claim and class discrimination claims pertaining to merit promotions, training and awards. Robinson has not sought our review of the district court's ruling on these dismissals.

2. The district court held that Robinson failed to establish that the putative class was sufficiently numerous to comply with the requirements of Rule 23. It also held that he had failed to establish that he had been denied awards or quality salary increases, and thus had failed to establish that his claims were typical of the proposed class.

lowship to the master's program in management offered at Temple University. App. at 13, 33. By 1970, Robinson had completed all course work required to obtain a Masters' Degree, and returned as a full-time employee at ASO. App. at 14, 34. Upon his return, Robinson acquired the additional duty of serving as an Equal Employment Opportunity Counselor ("EEO Counselor") App. at 34–5.[3] After Robinson fulfilled his duties and obligations as an EEO counselor at ASO, his career advancement came to an abrupt halt. App. at 14. In January of 1977, Robinson applied under Merit Promotion Vacancy Announcement ("VA") No. 76–53T for a competitive merit promotion to the GS–13 Supervisory Supply Systems Analyst position. This announcement was advertised to fill two vacancies open at that time.[4] Robinson submitted an application to fill one of these positions and was not selected for either one.[5] The gravamen of his complaint is that the failure of the ASO to promote him to one of the two supervisory positions he applied for was a result of disparate treatment on account of racial bias violative of Title VII. He challenges the Merit Promotion Plan itself as drafted and as applied.

The ASO Merit Promotion Plan is the local Navy program for filling positions by promotion in accordance with the Civil Service Commission's Federal Merit Promotion Program. App. at 1892–1901. The selection procedure in effect in 1977 and 1978, JOINTINST 12340.2E, involved a two-tiered screening process. The first step in filling the position advertised in VA 76–53T was to determine which of the applicants possessed the basic qualifications for the position. An employee was required to submit a written application (on a form prescribed by ASO) to the personnel office, describing the applicant's experience and answering job-related questions, including information on awards and training or education. At the close of the announced application period, a personnel management specialist would review the applications in order to determine whether the applicants possessed the basic qualifications for the position. The applications were evaluated against the standard set forth in the Office of Personnel Management's Qualifications Standard.[6] The applications meeting these minimum requirements would then be rated and ranked. Robinson was rated "highly qualified" and thus eligible for the position under this criteria. App. at 130–52.[7]

Second, if the applicant met the minimum qualifications, as did Robinson, the applicant's supervisor was required to provide a written appraisal evaluating the employee for the particular vacancy. In the event a supervisor had supervised the employee for less than six months, the supervisor was required to collaborate with the employee's

3. As an EEO Counselor, Robinson's duties included receiving complaints of individuals who felt that they had been discriminated against, investigating the allegations, and trying to resolve the issues. App. at 34.

4. The promotion process began when a vacancy occurred in an ASO position. Prior to announcing the vacancy, a meeting was held with a panel convened to evaluate the particular position. This panel, based on an analysis of the job or type of position, would establish specific criteria for filling the position, the standards to be applied in evaluating each of the criteria, and the scores to determine the relative standing of candidates. App. at 1796. The required qualifications, such as type, amount, and quality level of experience, as well as education which might substitute for experience, were indicated in the vacancy announcement. App. at 1797.

5. In addition to these vacancies, another Supervisory Supply Systems Analyst position opened, but it was not open to competitive merit promotion; Robinson did not apply for it and he was never considered for it. It involved repromotion eligibility, which is a non-competitive procedure. James Gaynor, a white male, filled that vacancy. Gaynor had previously worked with the Marine Corps as a GS–13 Supervisory Supply Systems Analyst. When his position was transferred he accepted a downgrade to a GS–12 non-supervisory Supply Systems Analyst and was therefore re-promotion eligible. He was trained by ASO employees, including Robinson. App. at 315, 329–31.

6. These qualifications are prescribed by the Office of Personnel Management for all government employees. App. at 1765–67.

7. Eligibles were ranked into two groups: "highly qualified" and "qualified." App. at 1436.

previous supervisor in filling out the appraisal. Therefore, Captain Gerald Abbott ("Abbott"), Robinson's supervisor at the time of his job application, and Ms. Kathleen Addis (now Fitzgerald) ("Addis"), Robinson's former supervisor, jointly prepared his appraisal.

The form utilized for supervisory appraisals by the ASO included 7 job elements (technical competence, quality and timeliness, communications abilities, cooperation, stability, supervision and administration, and subject matter skills and knowledge) and 25 subelements. App. at 1502–03. Applicants could receive a maximum of 4.0 points for each of the 7 job elements under which their merit promotion applications were evaluated (4 points for "outstanding" rating, 3 for "above average", 2 for "average", and 1 for "marginal") App. at 1426, 1439. Because each job element was usually worth a total of not more than 4 points, applicants could receive a maximum of 28.0 points. "Highly qualified" applicants were those candidates whose total raw point value was at least 21.0.

On his appraisal, Robinson obtained a total point value of 27.1, receiving 15 grades of "outstanding" and 10 grades of "above average" in the various subele-

ments. He received scores of less than 4.0 in Job Element I, Technical Competence; Job Element III, Communications Abilities; Job Element VI, Supervision and Administration; and Job Element VII, Subject Matter Skills and Knowledge. App. at 1498–99.[8]

Robinson's application and appraisal were then forwarded to a rating schedule panel to be scored under pre-determined written criteria with all other applicants for the job.[9] Based on his application and Abbott's and Addis's joint appraisal, Robinson received a score of 99.0 out of a possible 100 points. App. at 1498–99, 1441. Under this Merit Promotion Plan, supervisory appraisals alone could account for as much as 100 of the 100 points which an applicant could have been awarded in the rating process. App. at 1799.

This score of 99.0 placed Robinson 17th on a list of 24 applicants. The scores ranged from 100 to 89.8 and 10 people received scores of 100. After rating and ranking the candidates, the rating schedule panel prepared a list of applicants in order of their scores on the promotion certificate. The certificate, once issued, was then forwarded to a selection advisory panel to recommend employees for promotions. Eleven applicants were placed on the so-

**8.** In evaluating Robinson, Abbott collaborated with Addis and asked her to give him a rough draft of an evaluation form and some narrative comments on Robinson's performances. Addis filled out the appraisal, providing written justifications for her ratings of outstanding. Addis testified that she did not give Robinson a perfect rating because she felt that, among other things he did not have "outstanding" written communication skills, his written communications were poorly written and had needed much editing and reworking, and that he did not readily interrelate his knowledge of his own field with those of other fields to resolve problems. App. at 228–29. After Abbott received Addis's evaluation, he did his own evaluation, changing those of Addis's ratings with which he disagreed and providing or adding to Addis's written substantiations for those outstanding ratings which he felt Robinson deserved. App. at 269.

Abbott showed Robinson his appraisal. Robinson disputed several of the ratings. Abbott raised some, but not all of these ratings as a

result of his discussions with Robinson and Robinson's provision of information to justify these increases. Abbott, at trial, testified that he did not raise any of Robinson's ratings with regard to written communications to an outstanding because none of the documents Robinson showed Abbott to justify an outstanding were Robinson's exclusive work product. Rather, they were either joint efforts or had been written and then changed by his supervisor. App. at 269–78.

**9.** The panel recorded the scores given on the supervisory appraisal and these points were then combined with other relevant information (self-development, awards, etc.), thereby arriving at a raw score for each candidate. The raw score was then converted to a numerical system ranging from 70.0 to 100 as the highest possible score. Using this computation, the personnel office would then rank the candidates according to the numerical score derived from the criteria established by the rating schedule panel.

called Certificate of Eligibles.[10] Robinson's score, however, was not high enough to place him on the Certificate of Eligibles, and only those on the Certificate of Eligibles would be considered for a promotion as a Supervisory Supply Systems Analyst. Two white males, Leonard Burk and Michael Kopcho, were selected from the list of the eleven to fill the two vacancies. App. at 40–41. Had Robinson gotten a score of 100 he would, by virtue of his other qualifications, have been at the top of the list of eligibles. App. at 1880.

From December 1968 to the time of trial in July 1984, Robinson remained employed as a federal civil servant in the GS–12 Supply Systems Analyst position.[11] On September 30, 1984, Robinson retired from federal civil service.

## II.

The district court's finding that Robinson established a prima facie case of discrimination is not an issue in this appeal.[12] Robinson, however, contests the district court's conclusion that the defendants met their lesser burden of articulating a legitimate nondiscriminatory reason for his non-promotion.[13] Moreover, he alleges

---

10. Only eleven people could be placed on the Certificate of Eligibles and referred to the selection panel for consideration in accordance with civilian personnel law and regulation. For one vacancy a certificate could have no more than 10 names, and for two vacancies, no more than eleven. App. at 150. Each of the eleven individuals was white. Ten were male and one was female. All ten males received the numerical grade of 100. The female employee received a grade of 99.8.

11. Robinson was temporarily promoted to a GS–13 Supervisory Supply Systems Analyst position for one month. He was one of several employees who rotated into the position and received a temporary promotion.

12. In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court described one method by which to establish a prima facie case: (1) the plaintiff must belong to a racial minority; (2) he applied and was qualified for a job for which the employer was seeking applications; (3) despite his qualifications, he was rejected; and (4) after his rejection, the position remained open and the employer continued to seek applications from persons of the complainant's qualifications. *Id.* at 802, 93 S.Ct. at 1824.

13. As set forth in *McDonnell Douglas* and reaffirmed in *Burdine*, first, the plaintiff in an employment discrimination action has the burden of persuasion by a preponderance of the evidence to make out a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Thus, to rebut, the defendant has the burden of going forward with evidence explaining its actions, and if the defendant fails to produce any evidence, the court must enter judgment for the plaintiff. *Dillon v. Coles*, 746 F.2d 998, 1003 (3d Cir.1984).

As we discussed in *Dillon*, if the defendant does go forward, its burden is not persuasion but only production. If the defendant's evidence raises a genuine issue of fact, the presumption created by the plaintiff's prima facie case drops from the case. The plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination. *Id.* at 1003; *see also Bellissimo v. Westinghouse Electric Corp.*, 764 F.2d 175 (3d Cir.1985); *Duffy v. Wheeling Pittsburgh Steel Corp.*, 738 F.2d 1393 (3d Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984); *EEOC v. Great Atlantic & Pacific Tea Co.*, 735 F.2d 69 (3d Cir.), *cert. dismissed*, — U.S. —, 105 S.Ct. 307, 83 L.Ed.2d 241 (1984); *Worthy v. United States Steel Co.*, 616 F.2d 698 (3d Cir.1980); *Kunda v. Muhlenberg College*, 621 F.2d 532 (3d Cir.1980).

The defendants in this case purported to produce evidence of Robinson's relative lack of qualifications. Robinson, based on his application and appraisal score, was ranked 17th out of 24 applicants. In accordance with Merit Promotion Plan requirements only the top eleven applicants could be placed on the Certificate of Eligibles and forwarded to the selection panel for consideration. Thus, the Navy, by asserting that Robinson was not considered for selection because he was not ranked high enough to be placed on the Certificate of Eligibles, articulated a reason for Robinson's non-promotion. Robinson claims, however, that this reason is itself a "pretext to cover the underlying pretext." Supplemental Memorandum of Plaintiff, Appellant at 6. He maintains that the defendant has failed to articulate how the ten white males on the list received scores of 100 in the face of other lesser qualifications.

The Navy, however, directs this court's attention to the applications of each of the 10 candidates that received a numeric mark of 100. The Navy argues that the scores of nine of the ten were the result of not solely supervisory appraisals but of additional crediting for awards

that the district court made insufficient factual findings, as a matter of law, to sustain the legal conclusion that he failed to prove that the Navy's articulated reason was pretextual. He further assails the district court's exclusion of certain documentary evidence supposedly pertaining to the treatment of comparable white employees, the district court's denial of his petition for a temporary restraining order and the district court's denial of his motion for class certification.[14]

## III.

### A.

Robinson first claims that the district court misapplied the law because it failed to adhere to this court's decision in *Worthy v. United States Steel Corporation*, 616 F.2d 698 (3d Cir.1980) and therefore made insufficient findings of fact to justify its legal conclusion that Robinson failed to meet his burden of proving that the reasons advanced by the Navy for his non-promotion were pretextual.

In *Worthy*, a black employee brought an action against his employer asserting that his suspension and demotion constituted disparate treatment against him in viola-

tion of Title VII. In reviewing *Worthy*'s assertion that he received more severe punishment for a safety incident because he was black, we held that a plaintiff in a Title VII action is entitled to demonstrate that a facially neutral decision was in fact a pretext for discriminatory treatment. In so holding, we stated that evidence that white employees with comparable records were not similarly treated is particularly relevant.

The major issue in *Worthy* was whether the district court's *implicit* finding of no pretext was legally insufficient because the district court failed to consider the employer's treatment of comparable white employees in determining that there was no discrimination. We concluded that the finding was indeed legally insufficient and we remanded the action to the district court with directions to make additional findings on the issue of pretext for discriminatory activity. *Id.* at 703–04. We ruled that it was insufficient, as a matter of law, for the district court to merely determine that white workers with safety records as bad as black workers' safety records were demoted; the district court was also required to consider evidence presented by the plain-

and self-development (education and/or training). After consideration of the record, we do not believe that the district court's finding that the Navy articulated a legitimate nondiscriminatory reason for Robinsons' non-promotion is clearly erroneous.

Once a *facially legitimate reason* is proffered, the employee must then bear the burden of demonstrating that the reason given by the employer is in fact merely a pretext, *i.e.,* a fiction which obscures the reality of racial discrimination. *See Bellissimo,* 764 F.2d at 179.

**14.** Specifically, Robinson submits the following five issues for our review:

(1) Whether the district court applied an erroneous standard of law to the facts and ignored essential evidence in its findings of fact?

(2) Whether the district court's finding that the Navy's non-selection of Robinson for promotion was not the result of racial discrimination is clearly erroneous?

(3) Whether the district court abused its discretion in refusing to admit certain exhibits?

(4) Whether the district court abused its discretion in deciding not to certify the class?

(5) Whether this court has jurisdiction to review the denial of Robinson's motion for a temporary restraining order?

At the outset we note that our attention is focused primarily at issues (1) and (2), since we view these as the more meritorious of the contentions raised. As to these issues, our standard of review for assessing whether the district court's finding of no discrimination is correct is (a) whether the district court's findings of fact were clearly erroneous and (b) whether the district court's legal conclusions were based upon substantial evidence in the record, such that the decision was neither arbitrary nor capricious. *See Anderson v. City of Bessemer City, North Carolina,* —— U.S. ——, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781. 72 L.Ed.2d 66 (1982).

As to issues (3) and (4), we will briefly consider whether the district court abused its discretion. As to question (5), we will determine whether, as a matter of law, we have jurisdiction to review the denial of the motion for a temporary restraining order.

tiff and make a finding as to whether there were white workers whose safety records were as bad as his but were *not* disciplined to the extent that he was.

Thus, we stated in *Worthy* that before a finding of no pretext can be made, it is incumbent upon the district court to consider the evidence presented by the plaintiff purportedly showing that there are comparable whites who were not treated similarly. Moreover, we stressed the need for adequate findings of fact relevant to the pretext issue to provide an appellate court with a clear understanding of the basis of the decision. *Id.* at 704. With *Worthy* in mind, we must now consider whether the district court's findings of fact with regard to pretext in this case are sufficient as a matter of law for our review.

■ We remanded in *Worthy* because the decision did not contain any explanation for the district court's inconsistent findings and it appeared that the district court might have failed to consider evidence presented at the prima facie case stage in the pretext stage. *Id.* at 703. In contrast, the district judge in the present case concluded that Robinson *did not present evidence* establishing that the Navy's reasons for his non-selection were pretextual under the standard articulated in *Burdine.* App. at 1417. The ultimate burden remains with the plaintiff to prove to the trier of fact that the defendant engaged in discrimination. *Duffy v. Wheeling Pittsburgh Steel Co.,* 738 F.2d 1393, 1395 (3d Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984).

■ In this case, as the government points out, whether the Navy's articulated reasons were pretextual required the district judge's consideration of (1) whether the criteria upon which the scores of the applicants were determined were discriminatory; (2) whether other applicants received scores different from Robinson as a result of discrimination; and (3) whether the supervisory appraisals prepared for Robinson and other employees by Abbott and Addis were scored differently as a result of discrimination.

With regard to whether the criteria upon which the scores were determined was discriminatory, Robinson maintains that the Merit Promotion Plan emphasized the subjective evaluations of a promotion candidate's immediate supervisor and de-emphasized objective criteria such as education and experience. He claims that the plan ranked and screened out promotion candidates based on criteria not shown to be job related, *i.e.,* "unvalidated." *See Wilmore v. City of Wilmington,* 699 F.2d 667 (3d Cir.1983). Thus, he argues that the criteria by which the scores of the applicants were derived contained subjective elements which could be and were manipulated to discriminate. The district court, however, determined that Robinson failed to present evidence that this was done either by the rating and ranking panel or by his supervisors in preparing his appraisal.

The district court also examined Robinson's allegations that education and training criteria were used to screen out black applicants and that an insufficient amount of credit was given for his formal education. App. at 1416. The district judge noted that he found credible the testimony of Abbott that the reason for these criteria was to preclude limiting applicants receiving points for education and training to only those with college or graduate educations. The criteria used were to enable individuals with on-the-job experience and government training to also get points. App. at 1416. The district judge found that this policy was reasonable and that there was no evidence presented that the policy "somehow worked against blacks." App. at 1416.

Second, in terms of whether other applicants received scores different from Robinson due to discrimination, the district court found that the ASO Merit Promotion Plan was not discriminatory in and of itself and was applied properly so that Robinson's non-selection was not the result of any prohibited discrimination. The district judge noted that "The plaintiff ... presented several witnesses who gave anecdotal testimony of instances in which they be-

lieved the merit promotion system had been rigged to promote a favorite." *Id.* Witnesses offered by Robinson on this point were: Martha Robinson, Fenley and Cimmino. The district judge specifically determined that the testimony of these witnesses on this point was not credible. *Id.* Moreover, he examined the substance of the testimony presented by these witnesses and still found that it provided no evidence that the Merit Promotion Plan had been manipulated so as to discriminate against Robinson:

> Even if I found the testimony to be credible, which I do not, these histories have nothing to do with the facts of this case. They all involved promotions for different jobs, and with different supervisors giving the evaluations.

*Id.*

Finally, the district court considered and made findings as to whether the supervisory appraisals prepared for Robinson and other employees by Abbott and Addis were scored differently as a result of discrimination. Robinson avers that his failure to receive a sufficiently good supervisory appraisal that would place him on the Certificate of Eligibles was a result of racial discrimination. Moreover, he asserts that the plan was susceptible to manipulation by ASO supervisors, that it had, in fact, been so manipulated and that he had been affected by such manipulation. The district court concluded that this allegation was not supported by the evidence. Specifically, the district court found that Robinson "failed to present evidence that his supervisors harbored some racial animus and that it played a part in their treatment of Robinson." *Id.*

Thus, the district judge did examine whether Robinson's supervisors had evaluated him differently from the other applicants and whether the scores on the appraisal he received were the result of discrimination. App. at 1415. But he determined that the testimony of Robinson's supervisors, Abbott and Addis, was highly credible and that the score Robinson received was not the result of any prohibited racial discrimination. He concluded that the witnesses presented by Robinson to rebut the Navy's articulated reasons were not credible and therefore, did not establish that the Navy's articulated reasons were pretextual. Even if credible, the district court concluded that the substance of their testimony did not relate to the instant action. App. at 1416–17.

*Worthy* requires that the findings of the district court be *adequate* to understand *the basis* for the court's decision. Furthermore, Fed.R.Civ.P. 52(a) requires that a non-jury decision set forth *sufficient* findings of fact so that the appellate court, on review, can ascertain *the basis* for that decision.

Despite the fact that the district judge may not have addressed each point with the amount of specificity and detail we may have preferred, we cannot say that he misapplied *Worthy* with respect to his consideration of the evidence concerning comparable white employees. We believe he made adequate, *albeit* sparse, findings relevant to the pretext issue.

## B.

■ We also hold that the district court's finding of insufficient evidence to establish pretext is not "clearly erroneous." *See Bellissimo v. Westinghouse Electric Corp.,* 764 F.2d 175, 180 (3d Cir.1985). Furthermore, we do not believe that it was error on his part to credit the testimony of Robinson's supervisors to the effect that they exercised their best judgment without allowing race to affect their decision. *Whack v. Peabody,* 595 F.2d 190, 194 (3d Cir.1979).[15]

---

15. At oral argument, we expressed our concern with Abbott's articulated reason for not rating Robinson "outstanding" in written communications ability. Abbott attributed Robinson's rating to the fact that his written work product was joint work or the result of revision by his supervisor. Abbott testified at trial, however, that "no work gets performed in a Systems Development Division that is done by a single individual. Everything is done and is a series of events with other people ..." App. at 322. If all work was team work, Abbott could not give other

In reaching these conclusions, we are bound by the Supreme Court's most recent articulation of our scope of review. In *Anderson v. City of Bessemer, N.C.,* —— U.S. ——, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985), a Title VII sex discrimination case, the Supreme Court cautioned appellate courts as to the general principles governing the exercise of an appellate court's power to overturn findings of a district court. The foremost of these principles is that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). "If the district court's account of the evidence *is plausible* in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson,* 105 S.Ct. at 1512 (emphasis added).[16] Because we must give due regard to the opportunity of the trial judge to judge the credibility of witnesses, the district court's findings in this case cannot be disturbed.

Nonetheless, in affirming the district court's judgment, we do it with a sense of disquietude. Robinson's counsel prepared this matter with unusual thoroughness and presented a very compelling case which the . factfinder *could* have found established racial discrimination.

Certainly, there was abundant evidence in the record whereby the factfinder could have found that Robinson had as much or more education than any of the eleven white individuals placed on the Certificate of Eligibles—four of whom had only high school degrees. Surely, the factfinder could have found that Robinson had more overall experience and specialized experience in GS–13 series than any of the eleven whites placed on the Certificate of Eligibles, including the selectees Kopcho and Burke. Moreover, the factfinder could have found that it was significant that Robinson had trained James Gaynor, the third white man promoted ahead of him to GS–13, who had twice been rejected for Supervisory Supply Systems Analysts positions (due to his unfamiliarity in general with ASO systems), even if it was a re-promotion situation.

The factfinder could have also found that the subjective "criteria" used by supervisors were often masks for favoritism and manipulative devices to propel favorite employees into upper echelon positions without establishing that the persons chosen were the best qualified for the job. The factfinder could have found that it was incredible that Robinson's supervisors, after having rated him "outstanding", which in the wording of the controlling regulation means "exceptional, remarkable, eminent, rare, uncommon, unusual, singular or phe-

---

employees an outstanding for this job subelement. However, it was not only Robinson's rating on written communication ability which prevented him from receiving a numeric mark of 100 on his application.

By having creditable training and education, Robinson received additional points for self-development (training and education) for Job Elements I and VII raising his score on each to 4.0. By virtue of his less than outstanding ratings in Job Element III, Communications Ability, and VI, Supervision and Administration, Robinson received 3.50 and 3.55 points respectively. App. at 1498. This made his total point value 27.1 which led to his attaining a numeric mark of 99.0. App. at 1498–99. If Robinson had received a 4.0 for his written communication, he still would not have received a total point value of 28 and numeric grade of 100. He would

have received a total point value of 27.55, and a numeric mark of 99.6. App. at 1498–99, 1440–41. This would have ranked him twelfth out of twenty-four applicants and he still would not have ranked high enough to be placed on the certificate.

**16.** Although we find it somewhat disconcerting that the district judge's opinion makes no specific reference to the documentary evidence Robinson submitted, *see* section IV *infra.,* we are bound by *Anderson* and consider the district court's account of the evidence plausible. We have been presented with no reason to doubt that the findings issued by the district judge represented something other than his own considered conclusions regarding *all* of the evidence admitted.

nomenal" on more than half of the applicable job elements and subelements, app. at 1500, that, seven years later, at trial, when confronting a charge of racial discrimination, these same supervisors asserted that Robinson was merely "average". App. at 326–328. From our vantage point, there was much evidence by which the trial court could have found that the Merit Promotion Plan job criteria, which served to screen out Robinson for promotion selection, were "unvalidated" and not job related. But the trial court found that the testimony of the key supervisors was "highly credible."

Thus, even in light of all of the above findings that *could* have been made—and if they had been made, given our view of this record, they would have been appropriate—these were not the only findings that were permissible or plausible. The *Anderson* Court held that where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *Anderson,* 105 S.Ct. at 1512 (emphasis added). Under the standard set forth in *Anderson,* we feel compelled to conclude that the district court's findings in the instant matter cannot be deemed to be clearly erroneous.

Our appellate review process does not always guarantee that the "truth" is found or that individual justice is done; it merely guarantees that a case is tried and reviewed "according to the rules." And when that is done, *Anderson* teaches us that the appellate court cannot remand or reverse simply because it may, on a *de novo* review, have decided the case differently.

## IV.

■ We can more readily dispense with Robinson's remaining arguments.

Less persuasively, he avers that the district court erred by failing to admit documents which purportedly demonstrated a pattern or practice of discrimination at ASO. While it is established that evidence of pretext in a Title VII case can include an employer's general policy and practice with respect to minority employment, *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804–05, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973), the documents in issue apparently were exhibits which were not admitted into evidence either because (a) they were withdrawn in response to opposing counsel's objection, app. at 403–404, (b) they were rejected by the district court as irrelevant under Fed.R.Evid. 402 or (c) they were rejected for lack of foundation pursuant to Fed.R.Evid. 901.[17] We find no abuse of discretion on this record.[18]

## V.

Finally, Robinson alleges that the district court abused its discretion by denying his petition for a temporary restraining order and that it abused its discretion by denying his motions for class certification. We find these arguments equally unconvincing.

■ Regarding the denial of Robinson's motion for a temporary restraining order, we are of the opinion that we lack jurisdiction to review this contention. The denial of a temporary restraining order is not generally appealable unless its denial decides the merits of the case or is equivalent to a dismissal of the claim. 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2962 (1983). From our review of the record, the temporary restraining order in

---

17. The district court rejected Robinson's proffered exhibits P–6, P–9, P–15, P–27, P–30, P–41 and P–45 and exhibits involving years outside the precise year in which the promotion selection occurred.

18. We made clear in *United States v. Criden,* 648 F.2d 814, 817–18 (3d Cir.1981) that

... the most common category of decisions committed to the discretion of the trial court encompasses those situations where the decision depends on first-hand observation or di-

rect contact with the litigation.... [o]nly the trial judge has supervised the course of litigation through discovery and pretrial.... In those circumstances the trial court has a superior vantage point which an appellate court cannot replicate. The trial court's decision therefore merits a high degree of insulation from appellate revision. Rulings on evidentiary matters, discovery and procedural issues fall in this category.

this action would not have decided the merits of the case nor would it have amounted to a dismissal of Robinson's discrimination claim.

██ Concerning the class certification issue, we believe that the district court properly determined that Robinson failed to establish the numerosity requirement of Fed.R.Civ.P. 23(a)(1) because his Supplemental Motion for Class Certification did not establish that the number of blacks that were precluded from attaining supervisory and managerial positions is so numerous that joinder of all members is impracticable. "[A] Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigourous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Telephone Company of the Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). We see no impropriety in the district court's rulings.

## VI.

For the foregoing reasons, the judgment of the district court will be affirmed.