896 F.2d 801
 52 Fair Empl.Prac.Cas. 166,
52 Empl. Prac. Dec. P 39,686
GREEN, Elbert G., and Danley, Robert Individually and as
representatives of persons similarly situated
v.
USX CORPORATION, formerly known as United States Steel
Corporation, Appellant No. 86-1554.
GREEN, Elbert G., and Danley, Robert Individually and as
representatives of persons similarly situated
Appellants No. 86-1568
v.
USX CORPORATION, formerly known as United States Steel Corporation.
 Nos. 86-1554, 86-1568.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 8, 1989.
Decided Feb. 23, 1990.
 
 Richard Z. Freemann, Jr. (argued), Creed C. Black, Mark S. Stewart, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for appellants/cross appellees.
 Leonard L. Scheinholtz (argued), Patrick W. Ritchey, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., Thomas P. Preston, Duane, Morris & Heckscher, Philadelphia, Pa., for appellee/cross-appellant.
 Before HIGGINBOTHAM, Chief Judge,* MANSMANN and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Chief Judge.
 
 
 1
 This is an employment discrimination class action brought under 42 U.S.C. Sec. 2000e (1982) ("Title VII"), and 42 U.S.C. Sec. 1981 (1982). The plaintiffs-appellants ("plaintiffs" or "class") are a class of black persons who unsuccessfully sought employment at the Production and Maintenance Department of the Fairless Hills, Pennsylvania plant of defendant-appellee USX Corporation ("USX"), formerly known as United States Steel Corporation. After a December 1982 trial on liability issues,[1] the United States District Court for the Eastern District of Pennsylvania determined that USX was liable under plaintiffs' disparate impact theory of liability, but was not liable under their disparate treatment theory. Green v. United States Steel Corp., 570 F.Supp. 254 (E.D.Pa.1983). On appeal, this court affirmed the district court's finding of liability on the disparate impact theory, and held that the district court erred in concluding that plaintiffs failed to make out their disparate treatment claim. Green v. USX Corp., 843 F.2d 1511 (3d Cir.1988). On June 12, 1989, the United States Supreme Court vacated our decision and remanded this case for further consideration in light of Wards Cove Packing Co. v. Atonio, --- U.S. ----, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). USX Corp. v. Green, --- U.S. ----, 109 S.Ct. 3151, 104 L.Ed.2d 1015 (1989).
 
 
 2
 For the reasons that follow, we believe that Wards Cove does not undermine the district court's finding of liability on plaintiffs' disparate impact theory. However, upon reconsideration, we will affirm the district court's summary judgment in favor of USX on the plaintiffs' disparate treatment claim.
 
 I. Background
 
 3
 The facts and procedural history of this case were fully set out in the prior opinions of this court and the district court, an exercise that we need not repeat in detail here. Instead, we shall focus on the rationale underlying our previous opinion, which we are now compelled to reexamine.
 
 
 4
 In our prior opinion, we rejected USX's contention that disparate impact analysis is inapplicable to challenges to a multicomponent hiring system that utilizes subjective criteria. We stated:
 
 
 5
 USX asks us to disregard the fact that a statistically significant discriminatory result occurred as the result of its hiring practices, and focus only upon the fact that the class is unable to isolate a single offensive component. We cannot conclude that this is a proper balance of the burdens between employees and employers in such cases, or that it is the result contemplated by Congress, or by the Supreme Court in its interpretation of Title VII.
 
 
 6
 843 F.2d at 1521-22. Although we were persuaded that the class had "sufficiently identified the interview process as one component of the USX hiring system that resulted in the disparate hiring results", we also upheld the plaintiffs' challenge to USX's entire multicomponent hiring system. Id. at 1523.
 
 
 7
 We also rejected USX's argument that disparate impact analysis is inapplicable to a challenge to a hiring process which includes subjective criteria. The court was not persuaded that there was a "well-reasoned distinction between objective criteria that present barriers to employment opportunities for blacks, and subjective criteria that lead to the same results...." Id. at 1525. The exclusion of subjective criteria from the disparate impact analysis, we held, would encourage employers to use a wide range of subjective criteria "without ever articulating these criteria clearly or, more importantly, without validating their necessity to the selection procedure." Id. at 1525. We did not consider that requiring an employer to defend a challenge to its subjective hiring criteria constituted an onerous burden, since the employer could be presumed to have superior knowledge of its own employment practices.
 
 
 8
 We also held that the district court had erred in concluding that plaintiffs had not made out a prima facie case under their disparate treatment theory. We considered that the district court had used an impermissibly high, "smoking gun" standard of intent in making this determination. In our view, the prima facie showing of discriminatory intent was made out by the employer's awareness of a significant racial disparity in hiring, its use of "unguided subjective criteria," and its failure to maintain required employment records to monitor its compliance with a consent decree entered in a previous employment discrimination action. We further held that USX had not rebutted the plaintiffs' prima facie disparate treatment case with a legitimate, non-discriminatory reason for the challenged practices. Id. at 1526-27.
 
 II. Discussion
 A. Disparate Impact
 
 9
 In Wards Cove, plaintiffs challenged a number of employment practices at Alaskan salmon canneries, including nepotism, a rehire preference, a lack of objective hiring criteria, separate hiring channels, and a practice of not promoting from within. Plaintiffs asserted that these practices caused unskilled, low paying jobs to be filled predominately by non-whites, and skilled, higher paying jobs to be filled by whites.
 
 
 10
 The Supreme Court held that the plaintiffs had not made out a prima facie disparate impact claim with their simple statistical comparison between white and non-white cannery workers. Rather, "[t]he 'proper comparison [is] between the racial composition of [the at-issue] jobs and the racial composition of the qualified ... population in the relevant labor market.' " 109 S.Ct. at 2121 (quoting Hazelwood School District v. United States, 433 U.S. 299, 308, 97 S.Ct. 2736, 2742, 53 L.Ed.2d 768 (1977)). Alternatively, where labor market statistics are unavailable, "certain other statistics--such as measures indicating the racial composition of 'otherwise-qualified applicants' for at-issue jobs--are equally probative for this purpose." Id.
 
 
 11
 In Wards Cove, the Supreme Court also further defined the Title VII plaintiff's burden of proving causation in a disparate impact case, and discussed the employer's "business justification" rebuttal defense. The Court held that the plaintiff may not make out a prima facie discrimination case simply by showing a bottom line racial imbalance in the work force, or by identifying a number of allegedly discriminatory employment practices. Instead, the plaintiff must "demonstrate that the [racial] disparity ... is the result of one or more of the employment practices that they are attacking ..., specifically showing that each challenged practice has a significantly disparate impact on employment opportunities for whites and nonwhites." Id. at 2125. Once the plaintiff has made out a prima facie disparate impact claim, "the case will shift to any business justification [that employers] offer for their use of [the challenged] practices." Id. The Court explained that "[t]he touchstone of this inquiry is a reasoned review of the employer's justification for his use of the challenged practice." Id. at 2126. The Court emphasized that the "challenged practice [need not] be 'essential' or 'indispensable' to the employer's business for it to pass muster...." Id.
 
 
 12
 Of course, the plaintiffs could not have anticipated at trial the significant changes in employment discrimination law enunciated in Wards Cove. However, we believe that the evidence presented at trial was sufficient even under the Wards Cove standards to establish USX's liability under the plaintiffs' disparate impact theory.
 
 
 13
 First, we do not accept USX's contention that Wards Cove invalidates the plaintiffs' use of applicant flow data to establish their prima facie disparate impact case. In Wards Cove, the plaintiffs' statistical evidence consisted of a comparison of the racial composition of employees in unskilled and skilled positions, without consideration of the racial composition of the qualified labor pool for the at-issue positions. The Court rejected this approach, stating that a comparison between the racial composition between the qualified persons in the labor market and the racial composition of the population holding the at-issue jobs "generally forms the proper basis for the initial inquiry in a disparate impact case." 109 S.Ct. at 2121. However, the Court did not rule out other types of statistical evidence of discrimination, "such as measures indicating the racial composition of 'otherwise qualified applicants' for at-issue jobs...." Id.
 
 
 14
 Unlike the plaintiffs' evidence in Wards Cove, the plaintiffs' statistical evidence in this case dealt only with the employer's employment record for unskilled positions.[2] We believe that the plaintiffs' use of applicant flow data was an appropriate means of demonstrating the disparate impact of USX's hiring practices for those positions. The nature of the positions is that initially any able-bodied person should be competent to perform the job. Applicant flow data accurately reflects the pool of qualified candidates. Thus, Wards Cove 's concern about improper statistical comparison is not implicated here, since there is little danger that applicant flow data for unskilled positions would indicate racial disparity in hiring that is, in fact, attributable to the employer's non-race based consideration of the applicants' skills.
 
 
 15
 We also conclude that the class sufficiently identified the employment interview as a discriminatory hiring practice, and established that the interview had a "significantly disparate impact" on the employment opportunities for black and white applicants. It is true that the plaintiffs challenged a number of USX hiring practices at trial, and it is also true that this court upheld their broad challenge to USX's multicomponent hiring process. 843 F.2d at 1523. However, the plaintiffs did present evidence isolating the interview as a discriminatory employment practice, as was recognized by both the district court and this court. The district court found that "the process by which [USX] divined who, among its applicants, were the best qualified was wholly subjective, consisting essentially of combining the gut reactions to the applicant of employees in the personnel office and one or more foremen in the plant." 570 F.Supp. at 269.[3] On appeal, this court noted, and we still conclude, that "the class has sufficiently identified the interview process as one component of the USX hiring system that resulted in disparate hiring results." 843 F.2d at 1523. The evidence establishes that the subjective interviews had a significantly disparate impact on blacks, as the percentage of successful black interviewees was significantly less than the overall percentage of successful interviewees. See 843 F.2d at 1517-19; 570 F.Supp. at 262-64.
 
 
 16
 Finally, although Wards Cove may have reduced the employer's burden of showing a legitimate, non-discriminatory reason for the challenged practices, we perceive no reason to disturb the district court's, and our own, prior rejection of USX's assertion that the subjective criteria enabled it to identify the "best qualified" applicants for the essentially unskilled positions. 570 F.Supp. at 275-76; 843 F.2d at 1529. We still believe that USX's contention that blacks "dropped out" of the hiring process at a higher rate than whites was properly discounted by both courts. 570 F.Supp. at 271; 843 F.2d at 1529-30. Although Wards Cove may have relaxed the employer's burden to rebut the plaintiff's prima facie case, we do not read the decision as requiring us to accept at face value an employer's explanations of the adverse impact of its hiring practices on blacks. As the Wards Cove Court stated, "[a] mere insubstantial [business] justification ... will not suffice, because such a low standard of review would permit discrimination to be practiced through the use of spurious, seemingly neutral employment practices." 109 S.Ct. at 2126.
 
 B. Disparate Treatment
 
 17
 The district court rejected the plaintiffs' disparate treatment claim, holding that the class had failed to make out a prima facie case of intentional discrimination. 570 F.Supp. at 277. The court found that the plaintiffs had failed to "prove that the defendant intentionally and habitually discriminated against blacks on the basis of their race." Id. The district court determined that although USX officials were aware that the company's hiring practices had a disparate and adverse effect on black applicants, the officials were acting in the erroneous belief that they were complying with anti-discrimination laws.
 
 
 18
 On appeal, this court reversed the district court's disparate treatment holding. We considered that the plaintiffs had made out their prima facie case by showing the statistical disparity in hiring and USX's use of "unguided, subjective criteria that were never validated as essential to USX's employment practice, or determined to be nondiscriminatorily applied." 843 F.2d at 1528. We further determined that USX had not met its burden of rebutting the plaintiffs' prima facie showing with a legitimate, nondiscriminatory reason for its hiring practices. We rejected as unsupported by the record USX's explanation that the disproportional hiring was the result of the class members' lesser qualifications and their greater propensity to "drop out" of the hiring process. Accordingly, we held that USX was liable on the disparate treatment theory of liability.
 
 
 19
 Upon reconsideration, in view of the Supreme Court's imposition of an increasing burden of proof on civil rights plaintiffs, we conclude that we erred in our prior disparate treatment holding, and will now affirm the district court's ruling on this issue.[4] In Pullman-Standard v. Swint, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982), a Title VII action challenging an employer's seniority system,[5] the Supreme Court held that the issue of an employer's discriminatory intent in establishing a seniority system "is a pure question of fact, subject to [Fed.R.Civ.P.] 52(a)'s clearly-erroneous standard. It is not a question of law and not a mixed question of law and fact." Id. at 287-88, 102 S.Ct. at 1789-90. The Court explained that
 
 
 20
 [d]iscriminatory intent here means actual motive; it is not a legal presumption to be drawn from a factual showing of something less than actual motive. Thus, a court of appeals may only reverse a district court's finding of discriminatory intent if it concludes that the finding is clearly erroneous under Rule 52(a).
 
 
 21
 Id. at 289-90, 102 S.Ct. at 1790-91.
 
 
 22
 This court has consistently applied the clearly erroneous standard to the trial court's factual determinations concerning discriminatory intent. See, e.g., Equal Employment Opportunity Comm'n v. Metal Service Co., 892 F.2d 341, 344 (3d Cir.1990) (Title VII race discrimination claim); Robinson v. Lehman, 771 F.2d 772, 780 (3d Cir.1985) (same); Goss v. Exxon Office Systems Co., 747 F.2d 885, 888 (3d Cir.1984) (Title VII sex discrimination claim); Duffy v. Wheeling Pittsburgh Steel Corp., 738 F.2d 1393, 1396 (3d Cir.) (age discrimination claim), cert. denied, 469 U.S. 1087, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984). In our previous decision, however, we reviewed the district court's disparate treatment analysis under a plenary standard, determining that what was at issue was the district court's application of the appropriate legal standard of discriminatory intent, rather than its factual findings on this issue. 843 F.2d at 1526 n. 12.
 
 
 23
 Upon reexamination, we now conclude that the district court's rejection of the plaintiffs' disparate treatment claim was based not upon a misreading of the governing legal standard, but upon a proper evaluation of the evidence concerning USX's motivation in establishing its hiring procedures. As noted in our prior opinion, some of the district court's language suggested that it was imposing "a much more onerous burden upon the class than the Supreme Court has required for the establishment of a prima facie case of disparate treatment." Id. at 1526. However, at bottom, the district court's rejection of the disparate treatment claim was based on its factual finding that USX had set its hiring goals "in the sincere, though erroneous, belief that they were fulfilling the company's obligations under the anti-discrimination laws thereby, and not with any invidious purpose of disadvantaging black applicants." 570 F.Supp. at 277. We cannot say that the district court's finding in this regard is clearly erroneous.
 
 
 24
 Although we now affirm the district court's rejection of the plaintiff's disparate treatment claim, we continue to adhere to our prior admonition that under the disparate treatment standards enunciated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the evidence of discriminatory intent sufficient to make out a prima facie disparate treatment case "need not be so direct and uncontrovertible as 'smoking gun' evidence to compel a rebuttal by the defendant, and to require that the rebuttal be substantive and not mere pretext." Green, 843 F.2d at 1526 (emphasis in original). The disparate impact of the employer's challenged actions may be a highly relevant consideration in the evaluation of a disparate treatment claim. Indeed, the Pullman Court expressly recognized that the discriminatory effect of an employment practice is "part of the evidence to be considered by the trial court in reaching a finding on whether there was ... discriminatory intent as a factual matter." 456 U.S. at 289, 102 S.Ct. at 1790.
 
 C. Remaining Issues
 
 25
 In our initial opinion, we concluded that the district court erred in its rationale concerning prejudgment interest and front pay, and remanded for rehearing on those issues. We also affirmed the district court's class certification rulings, and its determination that summer applicants were properly included in the class to whom liability is owed. We see nothing in Wards Cove or elsewhere that requires us to disturb those holdings. Accordingly, we will reinstate our previous opinion to the extent it deals with the above issues.
 
 III. Conclusion
 
 26
 For the foregoing reasons, we will affirm the district court's judgment as to the plaintiffs' disparate impact and disparate treatment theories of discrimination. We will also reinstate our previous opinion to the extent noted in Part II.C. of this opinion. Accordingly, we will affirm that part of the judgment in which the district court ruled that class certification was proper, and that summer applicants were properly included in the class to whom liability is owed. We will also affirm the district court's damage award, except to the extent that the district court denied prejudgment interest and front pay. We will remand for further proceedings, in accordance with the reinstated portions of our previous decision, on those damages issues.
 
 
 
 *
 Honorable A. Leon Higginbotham, Jr., became Chief Judge of the Third Judicial Circuit on January 16, 1990
 
 
 [1]
 Trial on damages was held in April 1986, and the district court entered a damages award on August 1, 1986. Green v. United States Steel Corp., 640 F.Supp. 1521 (E.D.Pa.1986)
 
 
 [2]
 The district court found that the production and maintenance jobs at issue required no special skills, training, or background. As the court stated, eligible applicants "had to be at least 18 years old, pass a physical examination, and be able to read safety signs (a requirement so minimal that defendant's witnesses could recall no one ever having failed to meet it)." 570 F.Supp. at 257
 
 
 [3]
 We previously noted, and continue to hold, that because "subjective practices such as interviews are just as capable of operating to hinder the employment opportunities of blacks as are tests or other presumptively objective criteria," subjective hiring criteria are an appropriate subject for disparate impact analysis. 843 F.2d at 1525; see also Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 108 S.Ct. 2777, 2787, 101 L.Ed.2d 827 (1988) ("[S]ubjective or discretionary employment practices may be analyzed under the disparate impact approach in appropriate cases.")
 
 
 [4]
 The Supreme Court's remand directive might reasonably be construed as a requirement to reexamine our previous opinion only in light of the disparate impact analysis of Wards Cove. However, we note that USX's certiorari petition raised the Pullman issue. In any event, we do not believe that when the Supreme Court directs reconsideration of a lower court decision, the lower court is necessarily limited in its analysis to the explicit grounds set forth in the remand order. Our judicial responsibilities, and our obligations to the parties, require us on remand to correct what we now think the Supreme Court would consider to be a significant error in our original opinion
 
 
 [5]
 Although the plaintiffs in this case do not challenge USX's seniority system, the disparate treatment analysis in Pullman is generally applicable to the present disparate treatment claim. Under Sec. 703(h) of Title VII, 42 U.S.C. Sec. 2000e-2(h), it is not an unlawful employment practice for an employer to provide different employment standards pursuant to a bona fide seniority system "provided that such differences are not the result of an intention to discriminate because of race." The Supreme Court has consistently interpreted Sec. 703(h) to require a proof of disparate treatment, not simply disparate impact, to invalidate a seniority system under Title VII. Pullman, 456 U.S. at 277, 102 S.Ct. at 1784; Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 82, 97 S.Ct. 2264, 2275, 53 L.Ed.2d 113 (1977)